Opinion filed July 12,
2012

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-12-00044-CV 

                                                    __________

 

                  IN THE
INTEREST OF B.S. AND B.F., CHILDREN



 

                                   On
Appeal from the 318th District Court

 

                                                          Midland
County, Texas

 

                                                 Trial Court
Cause No. FM 52,162

 



 

                                            M E M O R A N
D U M   O P I N I O N

 

            The
trial court entered an order terminating the parental rights of the mother of B.S.
and B.F.  The trial court also terminated the parental rights of B.S.’s father.
 The mother (appellant) has filed a notice of appeal from the termination order.
 We affirm.

            Appellant
presents two issues for review.  In those issues, she asserts that the evidence
is legally and factually insufficient to support the finding that termination
is in the best interest of her children.  

            Termination
of parental rights must be supported by clear and convincing evidence.  Tex. Fam. Code Ann. § 161.001 (West Supp.
2011).  To determine on appeal if the evidence is legally sufficient in a
parental termination case, we review all of the evidence in the light most
favorable to the finding and determine whether a rational trier of fact could
have formed a firm belief or conviction that its finding was true.  In re
J.P.B., 180 S.W.3d 570, 573 (Tex. 2005).  To determine if the evidence is
factually sufficient, we give due deference to the finding and determine
whether, on the entire record, a factfinder could reasonably form a firm belief
or conviction about the truth of the allegations against the parent.  In re
C.H., 89 S.W.3d 17, 25–26 (Tex. 2002).  

            To
terminate parental rights, it must be shown by clear and convincing evidence
that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T)
and that termination is in the best interest of the child.  Section 161.001. 
In this case, the trial court found that appellant committed four of the acts
listed in Section 161.001(1).  The trial court found that appellant had
knowingly placed or knowingly allowed the children to remain in conditions or
surroundings that endangered the physical or emotional well-being of the
children, that appellant had engaged in conduct or knowingly placed the children
with persons who engaged in conduct that endangered their physical or emotional
well-being, that appellant had constructively abandoned the children, and that
appellant had failed to comply with the provisions of a court order stating the
actions necessary for her to obtain the return of the children.  See
Section 161.001(1)(D), (E), (N), (O).  Appellant does not challenge the findings
made pursuant to Section 161.001(1).  Any one of these unchallenged findings was
sufficient to support termination as long as termination was shown to be in the
children’s best interest.  See Section 161.001.  The trial court also
found that termination was in the children’s best interest.  See Section
161.001(2).  

The
question before us is whether the best interest finding is supported by legally
and factually sufficient evidence.  With respect to the best interest of a
child, no unique set of factors need be proved.  In re C.J.O., 325
S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied).  But courts may use the
non-exhaustive Holley factors to shape their analysis.  Holley v.
Adams, 544 S.W.2d 367, 371–72 (Tex. 1976).  These include, but are not
limited to, (1) the desires of the child, (2) the emotional and physical needs
of the child now and in the future, (3) the emotional and physical danger to
the child now and in the future, (4) the parental abilities of the individuals
seeking custody, (5) the programs available to assist these individuals to
promote the best interest of the child, (6) the plans for the child by these
individuals or by the agency seeking custody, (7) the stability of the home or
proposed placement, (8) the acts or omissions of the parent that may indicate
that the existing parent-child relationship is not a proper one, and (9) any
excuse for the acts or omissions of the parent.  Id.  Additionally,
evidence that proves one or more statutory grounds for termination may also
constitute evidence illustrating that termination is in the child’s best
interest.  C.J.O., 325 S.W.3d at 266.  

            The Texas
Department of Family and Protective Services became involved with appellant and
her children in July 2010 when appellant, while intoxicated, locked herself in
a room with B.F., who was a baby at that time.  Appellant had a knife and was
reportedly threatening suicide. Services were begun after this incident.  Then,
on December 1, 2010, another incident occurred that caused the children to be
removed from appellant’s care.  That night, appellant left the children alone
in her apartment.  B.S. was eight years old, and B.F. was eleven months old at
that time.  Appellant went to somebody else’s residence and got into a physical
altercation with a female.  The police were called.  The responding officer
described appellant as being intoxicated, “[n]ot at all [sober].”  He testified
that appellant had a strong odor of alcoholic beverage, bloodshot eyes, and
slurred speech.  Appellant was taken to the hospital to get a wound in her head
stapled shut.  She was arrested at the hospital for public intoxication after
she became belligerent with the police and the emergency room staff.  The
officer testified that appellant was in no condition that night to care for
children.

The
record shows that appellant has suffered with mental health issues since the
age of fourteen and has threatened suicide numerous times.  Appellant has been
diagnosed with schizoaffective bipolar disorder, anxiety, and depression. 
Appellant also has a history of substance abuse, including alcohol, marihuana,
and cocaine.  Appellant admitted that she drank excessively and sometimes
blacked out; that, up until a year before the trial in this case, she smoked
marihuana daily; and that she started using crack after her children were
removed.   Although appellant had been to rehab twice, once in 2004 and once in
August 2010, and was supposed to be working services to obtain the return of
her children, she tested positive for cocaine two or three times while this
case was pending in the trial court.  She also failed to show for twelve of her
nineteen scheduled drug tests.  Appellant also reported “a vicious cycle” of
domestic violence in her relationships with men.  There was ample evidence that
appellant could not provide a safe and stable home for her children.

            Appellant
was ordered to complete various services as part of her family service plan. 
She did not complete her services, and she cancelled twenty-two of the
forty-nine scheduled visitations with her children.  Appellant admitted at
trial that she was in no position to take the children home with her, that the
children were happy and healthy in the home of appellant’s aunt, and that B.F.
would be in a happy and healthy home if placed with his father.  Appellant also
agreed that her aunt would be a wonderful adoptive mother for B.S.  However,
appellant requested that her rights not be terminated and that she be allowed
to continue a relationship with her children through visitation.

            The
record shows that the trial court conferred with B.S. in chambers to determine her
wishes.  The Department’s conservatorship caseworker in this case, Martha Mayo,
testified that B.S. seemed much older than nine years old because of what she had
seen and because B.S. had been responsible for a lot of B.F.’s care.  Mayo reported
that she did not see much of a bond between the children and appellant but that
the “children are very bonded to [appellant’s aunt].”  The children had lived
with appellant’s aunt since December 6, 2010, and they were doing well in that
home.

B.F.’s
father learned two months prior to trial that B.F. was his son.  During those
two months, B.F.’s father had been “excellent” and had completed all of the
services requested of him.  He had bonded with B.F. in that short period of
time and showed that he would be a responsible father to B.F.  B.F.’s father
and appellant’s aunt were working together to keep a relationship between B.S.
and B.F.  The Department’s ultimate goal for the children was for appellant’s
aunt to adopt B.S. and for B.F.’s father to have sole custody of B.F.  Mayo
testified that the termination of appellant’s parental rights would be in the
children’s best interest.

Based
upon the evidence in the record, we cannot hold that the trial court’s best
interest finding is not supported by clear and convincing evidence; the trial
court could reasonably have formed a firm belief or conviction that it would be
in the children’s best interest for appellant’s parental rights to be
terminated.  The evidence is both legally and factually sufficient to support
the best interest finding.  Appellant’s first and second issues are overruled.  

            We
affirm the trial court’s order terminating the parental rights of the mother of
B.S. and B.F.

 

                                                                                                JIM
R. WRIGHT

                                                                                                CHIEF
JUSTICE

July 12, 2012

Panel consists of: Wright, C.J., 

McCall, J., and Kalenak, J.